MICHELE BECKWITH
Acting United States Attorney
EMILY G. SAUVAGEAU
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>    v.<br><br>DEVON NELSON,<br><br>                      Defendant. | CASE NO. 2:25-MJ-00016 CKD<br><br>GOVERNMENT'S MOTION TO REVOKE ORDER RELEASING DEFENDANT<br><br>Date: February 6, 2025<br>Time: 9:30 a.m.<br>Court: Hon. Troy L. Nunley |

The United States moves pursuant to 18 U.S.C. § 3145(a) to revoke the January 30, 2025 order releasing defendant Devon Nelson.

## I.    BACKGROUND

On January 24, 2025, the Honorable Carolyn K. Delaney signed an arrest warrant and criminal complaint charging the defendant with distribution of at least 400 grams of a mixture and substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1). E.D. Cal. Case No. 2:25-mj-00015-CKD, ECF No. 7, Count Five. As detailed in the Affidavit in support of Criminal Complaint, the defendant and his then-co-conspirator, Delvonta FIELDS, sold approximately 4,000 fentanyl pills to a confidential informant on June 12, 2024.[1] ECF No. 7, pp. 22-23.

The defendant was arrested on January 28 and made his initial appearance on January 29, where the United States moved for detention under 18 U.S.C. § 3142(f)(1)(C), as this case involves a

---

[1] FIELDS was fatally shot the following month.

MOTION TO REVOKE RELEASE ORDER                    0

Controlled Substances Act offense punishable by more than ten years in prison. The Honorable Allison Claire held a detention hearing on January 30, 2025, and ultimately ordered the defendant's release upon a $50,000 unsecured bond and Pretrial Services supervision, including a special condition of home confinement. 2:25-mj-00015, ECF No. 28 (Minute Order).

As set forth in the initial and supplemental Pretrial Services reports, the defendant's criminal history dates back to 2007. It began with four juvenile convictions. His adult criminal history includes a 2010 conviction for misdemeanor domestic violence, followed by a 2010 arrest for attempted murder which resulted in a conviction for assault with a deadly weapon, in violation of California Penal Code § 245(a)(1). Thereafter, the defendant violated probation and was convicted of misdemeanor obstruction. In 2015, he was convicted of felon in possession of a firearm. Weeks later, the defendant's probation was revoked, and he was remanded to serve 108 months in prison.

In 2021, less than a year after his release from prison, the defendant was again convicted of felon in possession of a firearm. In 2023, he was charged with misdemeanor obstruction, which remains pending. In 2024, he was charged with felony evasion for running from an officer who tried to pull him over based on a warrant he had for the 2023 obstruction case. He was placed on GPS ankle monitoring for the 2024 obstruction case in June 2024, just seven days before he sold law enforcement approximately 4,000 fentanyl pills in this federal case.

As detailed in the Complaint, the defendant distributed approximately 4,000 fentanyl pills through a then-high-ranking Oak Park Bloods gang member who has since died in a gang-related shooting. According to Sacramento Police Department detectives and Sacramento Web Known Person Finder (also known as "WebKPF") records, the defendant has been a validated Oak Park Bloods gang member since at least 2015. The defendant denied current gang membership in his interview with Pretrial Services. The defendant further admitted to using drugs multiple times per week, but he stated that he does not believe his drug use is a problem.[2] He is unemployed.

---

[2] The defendant's surety and paramour, Ms. Fisher, stated that the defendant has never used drugs or consumed alcohol, and she was unaware of the defendant's prior participation in a substance abuse program through Sacramento County.

MOTION TO REVOKE RELEASE ORDER            1

## II.     STANDARD

If a person is ordered released by a magistrate judge, then "the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release." 18 U.S.C. § 3145(a)(1); *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1991); *United States v. Evans*, 62 F.3d 1233, 1237 (9th Cir. 1995) ("Rule 40 and section 3145 . . . place[d] the review of the magistrate judge's order in the province of the district court where the prosecution is pending, and where the bail status of the defendant ultimately will be determined during the course of that trial.").

When considering whether to revoke a release order, the reviewing district court conducts a *de novo* review of a Magistrate Judge's bail ruling. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). It "review[s] the evidence before the magistrate and make[s] its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. If the performance of the district court's function "makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate." *Id.*

There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e)(3). If the Court finds that the defendant has proffered evidence to rebut the presumption of dangerousness and flight, the Court then considers four factors in determining whether release is appropriate: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g). "The presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). In this case, all four factors weigh in favor of the defendant's pretrial detention.

### III.    ARGUMENT

The defendant is a recidivist and violent gang member with a documented history of violating court supervision. In this case, the presumption in favor of detention is supported by clear and convincing evidence of the danger the defendant poses to the community. Each of the § 3142(g) factors weigh in favor of detention.

First, the nature and circumstances of the offense are serious—the defendant distributed a large amount of potent fentanyl in coordination with other gang members.

Second, the weight of the evidence is overwhelming. The controlled purchase described in the Complaint was surveilled by law enforcement officers, recorded via covert audio/video recordings, and corroborated by the defendant's GPS data which placed him at the controlled purchase during the time of the buy. There is no question that the defendant brough 4,000 fentanyl pills to Fields, who sold them to the confidential source.

Third, the history and characteristics of the defendant weigh in favor of detention. Since 2007, the defendant has been in and out of custody, sustaining multiple convictions for firearm and violent offenses. He has no job and minimal community ties outside of his gang affiliations and criminal record. Now, the defendant proposes to live with his paramour, Mercedes Fisher. The defendant has violated probation multiple times despite her presence in his life. The defendant was using a cell phone subscribed to Ms. Fisher when he committed the distribution of fentanyl he now faces, *see* ECF No. 7, ¶ 77, n. 16. Ms. Fisher and Ms. Nears' unsecured bonds are sufficient to overcome the danger that the defendant poses to this community. Most tellingly, he was placed on pretrial supervision just seven days before he distributed large amounts of fentanyl in this investigation—demonstrating that he will not abide by conditions of release imposed upon him in a pending criminal case such as this.

Fourth, the danger that the defendant poses if released is severe. The defendant is known to possess firearms despite being prohibited from doing so. He does not believe that his drug use is an issue, and he minimizes his gang affiliation. But his Oak Park gang affiliation cannot be ignored, particularly where, in this investigation alone, three people have been shot and two died from their injuries. If the defendant is released, and particularly if he is released without owning his gang membership and addressing his drug abuse, the danger he poses to this community is momentous.

Release on an unsecured bond with a third-party custodian who cannot overcome his danger will not protect the community from the danger that this defendant poses if released.

### IV.   CONCLUSION

For the reasons set forth above, the government requests that the Court enter the attached proposed order staying the proceedings pending a hearing on the motion to revoke. The government further requests that the Court revoke the release order after a hearing on the motion.

Respectfully submitted,

Dated: January 31, 2025

MICHELE BECKWTIH
Acting United States Attorney

By: /s/ EMILY G. SAUVAGEAU
EMILY G. SAUVAGEAU
Assistant United States Attorney